**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Charles Frances WEST, Jr., Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Bradley David THOMAS, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Matthew Mervin MILLS, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**James J. WILLIAMSON, Defendant–Appellant.**

Nos. 88–5803, 88–5808, 88–5809, 88–5810.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 4, 1988.

Decided June 8, 1989.

Andrew Cotzin (Joel Hirschhorn, Joel Hirschhorn, P.A., on brief), Thomas Roy Michael, Randy Dean Gossett (Don A. Yannerella on brief), Brent E. Beveridge, for defendants-appellants.

Thomas Oliver Mucklow, Asst. U.S. Atty. (William A. Kolibash, U.S. Atty., Lisa A. Grimes, Sp. Asst. U.S. Atty., on brief) for plaintiff-appellee.

Before RUSSELL and WILKINSON, Circuit Judges, and BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.

TERRENCE WILLIAM BOYLE, District Judge:

Charles Frances West, Jr., Bradley David Thomas, Matthew Mervin Mills, and James J. Williamson appeal their convictions on various drug-related charges arising out of a 108–count indictment. We affirm, except for West's conviction on Count 57 for unlawful use of a communication facility, which we reverse, and Thomas's sentence for his conspiracy conviction on Count 4, which we set aside.

## I.

The 18–day trial revealed the defendants' participation in an organization engaged in the large-scale importation and distribution of marijuana and cocaine. Drugs were smuggled into Florida, primarily from the Bahamas and Jamaica, and distributed in the Ohio Valley and Wheeling, West Virginia areas. Thomas was the ringleader in direct or indirect control of all the organization's activities. West was a major distributor. Mills became involved initially as a distributor and later as overseer of the "safehouses" used to store and distribute the drugs. Williamson was a courier who transported drugs and money between Florida and the Ohio Valley.

All four defendants were convicted of conducting, and conspiring to conduct, an enterprise through a pattern of racketeering activity, 18 U.S.C. §§ 1962(c) and (d), and conspiracy to distribute and possess with intent to distribute cocaine. 21 U.S.C. § 846. In addition, Thomas was convicted of engaging in a continuing criminal enterprise, 21 U.S.C. § 848, eight counts of distribution of cocaine, 21 U.S.C. § 841(a)(1), seventeen counts of interstate travel in aid of a racketeering enterprise, 18 U.S.C. § 1952(a)(3), and two counts of tax evasion, 26 U.S.C. § 7201; Mills was convicted on nineteen counts of distribution of cocaine and eleven counts of interstate travel in aid of a racketeering enterprise; West was convicted on twenty-two counts of distribution of cocaine, two counts of interstate travel in aid of a racketeering enterprise, and three counts of using a communication facility to facilitate the distribution of cocaine, 21 U.S.C. § 843(b); and Williamson was convicted on one count of distribution of cocaine and one count of distribution of marijuana. A judgment of forfeiture was also entered under 18 U.S.C. § 1963(a) with respect to vehicles and real property found

to have been utilized by the defendants in violation of 18 U.S.C. § 1962 (RICO).

## II.

 Mills contends he was denied effective assistance of counsel as the result of various rulings by the district court concerning his pro se status. Mills and Williamson initially retained attorney Donald Yannerella to represent them at the detention hearing on July 15, 1987 and the arraignment the next day. The district court, finding good cause to believe no conflict of interest was likely to arise, subsequently accepted Mills' and Williamson's waivers of their right to separate counsel and allowed both to proceed with Mr. Yannerella.

On September 28, 1987, less than a month before the scheduled trial date of October 26, the district court received a letter from Mills stating that he had dismissed Mr. Yannerella as his counsel and requesting leave to proceed pro se. A hearing was held on October 8 at which the court inquired into Mills' educational background and his knowledge of the pending charges. The court informed Mills that he faced 43 counts having total penalties of 470 years to life imprisonment and $4,190,-000 in fines. He was advised repeatedly of the dangers and disadvantages of self-representation. He was also told that the case would not be continued because of his pro se status. Despite the district court's exhortations against trying to represent himself and warning that the court would not act as his attorney, Mills reiterated his desire to proceed pro se. He stated that he was dissatisfied with Mr. Yannerella's representation because "his work has produced limited results by motions he has filed, several disagreements with me on my defense, and more." He admitted to having no legal experience but said that "I am

going to base myself on the truth and that is all there is to it."

The district court found that Mills had no good cause to dismiss his attorney and expressed doubt about his ability to represent himself. However, the court also found that he had waived his right to counsel knowingly and intelligently and therefore accepted his waiver and granted leave to proceed pro se. He was told that he could retain standby counsel or that one would be appointed upon a showing of indigency.

 Mills subsequently changed his mind and informed the court that he no longer desired to defend himself. A second hearing was held on October 15, 1987 at which Mills requested the court to appoint Mr. Yannerella to represent him. Although Mills had previously retained Mr. Yannerella, he said that he could not afford his fees and that he was too embarrassed to say so at the earlier hearing. Due to the thorough and extensive nature of that hearing and the fact that the trial was only eleven days away, the district court refused to accept Mills' waiver of his previously asserted right to self-representation. However, the court did appoint standby counsel and told Mills that "you can decide just how far you want to proceed on your own and how far you want your counsel to help you." Mills filed several pre-trial motions, including a request for a psychiatric evaluation, which were denied.[1]

On the first day of trial, before Mills gave his opening statement, he received cautionary instructions in regard to his pro se representation. He was told that he would be held to the same rules of law, procedure and evidence governing the other attorneys, that he must refrain from speaking in the first person, that he must avoid reference to his co-defendants in his opening and closing statements without the

---

1. Mills contends that the district court improperly denied his pro se motion to determine his mental competency. 18 U.S.C. § 4241(a) provides that a hearing on such motion shall be conducted if there is "reasonable cause to believe" that the defendant may be incompetent. Mills made no factual showing in support of this motion. The district court, having observed

and talked with Mills at numerous prior hearings, found no reasonable cause to believe he was unfit to stand trial and therefore denied the motion. Such a determination is within the trial court's discretion, and we find no error. *See Streetman v. Lynaugh,* 835 F.2d 1519, 1525–26 (5th Cir.1988).

court's prior approval, and that he must not refer to matters not in evidence. The district court warned Mills that if he did not abide by these restrictions his pro se status would be terminated and he would have to proceed with standby counsel.

Mills delivered his opening statement, ending it as follows:

Although I am not a professional, I will do the best that my ability will allow, and I hope you will bear with me. I hope you will believe in our country's motto, innocent until proven guilty, not the complete opposite of guilty until proven innocent, which both the Court and the Government appear to have forced upon me.

At last, with all my respect to Mr. Hirschhorn, Mr. Michael, Mr. Gossett, Mr. Yannerella, for all the work they have done and all the ability they have, gentlemen, I feel we are somewhat at a disadvantage due to all that we have said, all that we have tried, and mostly, all our motions we have filed which have been denied. Men, I definitely feel we are not the home team.

I ask of you and pray to you, the jury, treat us not like the visitors. Thank you.

The following day the district court found Mills incompetent to represent himself on the basis of these statements and appointed his standby counsel, Thomas Bedell, to replace him. Mr. Bedell immediately moved for a continuance on the ground that he was unprepared to act as counsel because of his appointment to the case only eleven days before trial. This motion was denied.

Mills contends that the "cumulative effect" of the district court's various rulings deprived him of a fair trial. We find no error in any of these rulings, either individually or cumulatively. The district court accepted Mills' initial decision to dismiss his attorney and proceed pro se only after thoroughly apprising him of the dangers and disadvantages of self-representation. Mills' subsequent protestations of embarrassment do not rebut the district court's finding, supported by the record as a whole, that he waived his right to counsel knowingly and intelligently. *See United States v. Gallop*, 838 F.2d 105, 109–10 (4th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988).

■ Nor was it error to deny Mills' subsequent request eleven days before trial to substitute Mr. Yannerella for himself as counsel. The determination of whether or not a motion for substitution of counsel should be granted is within the trial court's discretion, and the court is entitled to take into account the countervailing public interest in proceeding on schedule. *Gallop*, 838 F.2d at 108. This countervailing interest has no less weight merely because the motion is filed by a pro se defendant. *See Sampley v. Attorney General of North Carolina*, 786 F.2d 610, 613 (4th Cir.), *cert. denied*, 478 U.S. 1008, 106 S.Ct. 3305, 92 L.Ed.2d 719 (1986) (trial court is necessarily entitled to take into account the countervailing interest in proceeding on schedule when defendant requests continuance on basis that he does not have counsel to represent him). We have said that "[t]he defendant cannot be allowed to continue the practice, with little or no apparent reason, of hiring and firing attorneys," *Gallop*, 838 F.2d at 110, and this remains true when the defendant is "hiring and firing" himself. As the Seventh Circuit has observed:

A criminal defendant has a constitutional right to defend himself; and with rights come responsibilities. If at the last minute he gets cold feet and wants a lawyer to defend him he runs the risk that the judge will hold him to his original decision in order to avoid the disruption of the court's schedule that a continuance granted on the very day that trial is scheduled to begin is bound to cause.

*United States v. Solina*, 733 F.2d 1208, 1211–12 (7th Cir.), *cert. denied*, 469 U.S. 1039, 105 S.Ct. 519, 83 L.Ed.2d 408 (1984). Here the district court engaged in the proper though not necessarily exclusive procedure of requiring the capricious defendant to proceed pro se while appointing standby counsel to serve as a back-up. *See Gallop*, 838 F.2d at 110.

■ Mills contends he was improperly removed as pro se counsel following his opening statement, since the district court made no finding that he had deliberately disrupted the trial. Such a finding was unnecessary. Mills directly attacked the district court's integrity and dignity by characterizing it as the "home team" on the side of the government and accusing it of imposing upon him a presumption of guilt. As the Supreme Court noted in *Faretta v. California*, 422 U.S. 806, 834 n. 46, 95 S.Ct. 2525, 2541 n. 46, 45 L.Ed.2d 562 (1975), "The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." By asserting his right of self-representation, Mills assumed the responsibility of acting in a manner befitting an officer of the court. By flouting the responsibility, he forfeited the right. The district court thus acted properly in protecting both the right of Mills' co-defendants to a fair trial and its own authority by removing Mills as pro se counsel.

■ The district court also acted properly in denying Mills' motion for a continuance to allow his standby counsel more time to prepare following his removal. Mills' waiver of his right to counsel was accepted by the district court only after it informed him there would be no continuances by reason of his pro se status. The district court warned Mills prior to his opening statement that improper conduct would result in his removal as pro se counsel and replacement by standby counsel. The prospect of immediately going forward with standby counsel was thus a risk Mills knowingly accepted, and indeed flouted, when he made his inflammatory remarks. The need for some limit to a defendant's ability to manipulate the judicial system, *see Gallop*, 838 F.2d at 110, justified the district court's denial of his subsequent motion to continue.

### III.

■ The three-week trial was disrupted with two outbursts by Mills and one outburst by West. After Mills' first outburst the court warned him out of the jury's presence that he would be gagged if he disrupted the trial again. After his second outburst the court gave Mills the choice of either being gagged or being excluded from the courtroom, and he chose to be excluded. When the trial was disrupted for a third time by West during closing argument, West was removed from the courtroom and not allowed to return until after the jury had begun its deliberations.

West contends that his removal violated Rule 43(b)(2) of the Federal Rules of Criminal Procedure, which provides that a defendant shall be considered to have waived the right to be present at trial when, "after being warned by the court that disruptive conduct will cause the removal of the defendant from the courtroom, [he] persists in conduct which is such as to justify exclusion from the courtroom." West claims he was never warned that disruptive conduct would result in his removal. However, West's outburst followed the two disruptions by Mills, which resulted in warnings from the court and Mills' exclusion from the courtroom. Although the court's warnings were not directed specifically to West, he was present when they were made and therefore on notice of the potential consequences of his disruptive conduct. The purpose of the notice requirement is not to allow each defendant one free outburst, but to ensure that each defendant is aware that disruptive conduct may result in his removal. Notice to one defendant is notice to all present in the courtroom for purposes of Rule 43. We therefore find that West was properly excluded.

### IV.

West and Williamson assert error in the denial of their motions for severance and mistrial. Both contend they were unduly prejudiced by Mills' opening statement and outbursts, and Williamson cites West's outburst as an additional cause for prejudice.

■ The grant or denial of a motion for severance or mistrial is within the trial court's discretion and will not be over-

turned absent a clear abuse of that discretion. *Person v. Miller,* 854 F.2d 656, 665 (4th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1119, 103 L.Ed.2d 182 (1989) (severance); *United States v. Thompson,* 744 F.2d 1065, 1068 (4th Cir.1984) (mistrial). A defendant must show prejudice in order for the court's ruling to constitute an abuse of discretion, and no prejudice exists if the jury could make individual guilt determinations by following the court's cautionary instructions. *United States v. Porter,* 821 F.2d 968, 972 (4th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988).

■ West and Williamson fail to show any prejudice from the trial's disruptions. The district court gave cautionary instructions to the jury following Mills' opening statement and each of the three outbursts. The jury's verdict indicates that it conscientiously followed these instructions and disregarded the improper statements and conduct of Mills and West. Mills and West were both found not guilty of the most serious charge of engaging in a continuing criminal enterprise. In addition, the jury acquitted Mills on eight counts, West on seven counts,[2] and Thomas on four counts. It can be inferred that the jury carefully considered the evidence against each defendant and based its verdict solely upon that evidence. *See Porter,* 821 F.2d at 972. For this reason we also find no merit in Williamson's claim of "extreme prejudice" from what he describes as the "overwhelming evidence" against his co-defendants.

In concluding that the district court acted properly in denying the motions for severance and mistrial, we cannot avoid noting that Mills and West had both filed pre-trial motions for severance which were denied. Allowing their outbursts to result in a severance would therefore have enabled them to subvert the legal process by obtaining through their misconduct what they were unable to obtain through their motions. Whether or not this was their intention, it would certainly have been the result, and the effect would only be to encourage future misconduct by defendants. "If such

conduct by a co-defendant on trial were held to require a retrial it might never be possible to conclude a trial involving more than one defendant; it would provide an easy device for defendants to provoke mistrials whenever they might choose to do so." *United States v. Aviles,* 274 F.2d 179, 193 (2nd Cir.), *cert. denied,* 362 U.S. 974, 982, 80 S.Ct. 1057, 1058, 1059, 1068, 1071, 1073, 4 L.Ed.2d 1009, 1010, 1015, 1016 (1960). *See also United States v. Mazza,* 792 F.2d 1210, 1224–25 (1st Cir.1986), *cert. denied,* 479 U.S. 1086, 107 S.Ct. 1290, 94 L.Ed.2d 147 (1987); *United States v. Chaussee,* 536 F.2d 637, 641 (7th Cir.1976).

Of course, the trial court must proceed in these situations with particular care for the rights of the "passive" defendants, in this case Williamson and Thomas. *See United States v. Tashjian,* 660 F.2d 829, 837–38 (1st Cir.), *cert. denied,* 454 U.S. 1102, 102 S.Ct. 681, 70 L.Ed.2d 646 (1981). The relevant considerations were set forth in *United States v. Bamberger,* 456 F.2d 1119, 1128 (3rd Cir.), *cert. denied,* 406 U.S. 969, 92 S.Ct. 2424, 32 L.Ed.2d 668 (1972), 413 U.S. 919, 93 S.Ct. 3067, 37 L.Ed.2d 1040 (1973):

> This issue presents a delicate balancing of the right of a passive co-defendant to have his cause determined in an atmosphere free of inflammatory speech and gesture, society's interest in speedy trials for those accused of crime, the realities of sound judicial administration, and a consideration of convenience to witnesses. The accommodation of these countervailing considerations is entrusted to the trial judge. So long as he accords the necessary protection to the passive defendant within the parameters of sound judicial discretion we should not disturb his decision.

Since we believe, for the reasons stated above, that the district court's cautionary instructions adequately protected Williamson and Thomas from their co-defendants' misconduct, we find no error in the denial of the motions for severance and mistrial.

---

**2.** West was also acquitted on two additional counts by judgment of the district court.

## V.

■ West challenges his RICO, RICO conspiracy, and conspiracy convictions on the ground that the evidence only established a buyer-seller relationship between himself and the Thomas organization, and that there was no evidence that he was a distributor for the organization or was aware of its activities in importing and distributing drugs. However, the jury heard testimony that West was one of the Thomas organization's two biggest customers, that he would purchase cocaine and marijuana two or three times a week from its "safehouses" spending two to nine thousand dollars each time, that he had been seen with one million dollars and "multi kilos" of cocaine in his possession, and that he was a major supplier in the black community of the Wheeling, West Virginia area. One member of the organization testified that Thomas and Mills gave special instructions that West was to be sold whatever he wanted, and that West once delivered $95,000 with the explanation that Thomas had told him (West) he needed money. This evidence, viewed in the light most favorable to the government, enabled the jury to reasonably conclude that West knowingly participated in the activities of the Thomas organization.

■ West also challenges his convictions on Counts 57 and 58 of the indictment. The government concedes there is no evidence to support the charge contained in Count 57 for unlawful use of a communication facility, and since our own review of the record reveals none, we reverse West's conviction on that count.

■ Count 58 charged West with causing interstate travel by another for the purpose of carrying on an unlawful activity in violation of the Travel Act, 18 U.S.C. § 1952(a)(3). Jeffrey Kuhar, a resident of Bridgeport, Ohio, testified that he bought cocaine from West at West's home in Wheeling, West Virginia, two dozen times between October, 1984 and April, 1985. This evidence was sufficient for the jury to infer that Kuhar traveled interstate from Ohio to West Virginia in order to make the purchases. We therefore affirm West's conviction on Count 58.[3]

## VI.

■ Thomas contends that the district court erred in admitting evidence of a January, 1987 marijuana transaction in Jamaica which occurred after his arrest and incarceration in May, 1986. He does not dispute that the individuals involved in this transaction were his co-conspirators prior to his arrest. Nor does he deny that the transaction occurred in furtherance of the same conspiracy of which he had been a member. Thomas argues instead that his arrest constituted evidence of his withdrawal from the conspiracy and therefore "the post-arrest evidence should not have been admissible absent an affirmative showing that Thomas somehow continued in his role as a conspirator from jail." We disagree.

■ A defendant's membership in a conspiracy is presumed to continue until he withdraws from the conspiracy by affirmative action. Withdrawal must be shown by evidence that the defendant acted to defeat or disavow the purposes of the conspiracy. If the defendant produces such evidence, the issue of withdrawal goes to the jury, and the government must then prove beyond a reasonable doubt that the defendant did not withdraw from the conspiracy. *United States v. Urbanik*, 801 F.2d 692, 697 (4th Cir.1986). Thomas cannot therefore challenge the relevancy of the disputed evidence on the ground that he had withdrawn from the conspiracy, since that was a question to be decided, if at all, by the jury, and determinations of relevancy obviously must be made without benefit of the jury's conclusions.[4]

The district court determined that the post-arrest evidence was relevant on the

---

**3.** Since West was found to have conspired with others who were convicted of interstate travel in connection with illegal drug activity, this case is distinguishable from *Rewis v. United States,* 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971), which held that mere operation of an illegal activity which attracts out-of-state customers is insufficient to support a conviction for causing a violation of the Travel Act.

**4.** Arrest and incarceration may constitute enough evidence of withdrawal to create a question for the jury. *United States v. Panebianco,*

basis of the government's uncontested representation that two of the participants in the January, 1987 marijuana transaction were co-conspirators with Thomas prior to his arrest. Given the presumption that Thomas's membership in the conspiracy, if proven, continued after his arrest, evidence of that transaction was relevant to proving the scope of the conspiracy's activities. We therefore find the evidence was properly admitted.

## VII.

■■■ All four defendants contend that the district court gave an improper version of the *"Allen* charge"[5] to the jury which had an unduly coercive effect. The court's action was prompted by a note from the jury late in the afternoon of the fourth day of deliberations asking, "How do we handle not having a unanimous verdict on certain counts?" After instructing the jury as set forth below,[6] the court sent them back to deliberate for another twenty-five minutes before recessing for the day. The next morning, after the jury had been deliberating for fifty minutes, the court gave a supplemental instruction over the defendants' objection.[7] Forty-six minutes later the court summoned the jury and asked the foreman, again over the defendants' objec-

543 F.2d 447, 453 (2nd Cir.1976), *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1129, 51 L.Ed.2d 553 (1977); *United States v. Harris,* 542 F.2d 1283, 1301 (7th Cir.1976), *cert. denied,* 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977); *United States v. Cohen,* 516 F.2d 1358, 1364 (8th Cir. 1975). In this case the jury only heard evidence of Thomas's arrest. Fearing potential prejudice, Thomas chose not to present evidence of his incarceration. However, we are not faced with the question of whether Thomas's arrest was sufficient to create an issue of withdrawal for the jury, because he never requested that this issue be submitted to the jury. *See* Fed.R.Crim. P. 30. The government therefore never assumed the burden of proving that Thomas did not withdraw from the conspiracy.

5. *See Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

6. THE COURT: Members of the jury, I am going to ask you to continue your deliberation in an effort to agree upon a verdict to dispose of this case, and I have a few additional comments I would like for you to consider as you do so.

This is an important case. The trial has been expensive in time, effort, and money, both to the defense and prosecution. If you should fail to agree on a verdict, the case is left open and must be tried again. Obviously, another trial would only serve to increase the cost of both sides, and there is no reason to believe that the case can be tried again by either side better or more exhaustively than it has been tried before you.

Any future jury must be selected in the same manner and from the same source as you were chosen, and there is no reason to believe that the case could ever be submitted to 12 men and women more conscientious, more impartial, or more competent to decide it, or more or clearer evidence could be produced.

If a substantial majority of your number are for a conviction, each dissenting juror ought to consider whether a doubt in his or her mind is a reasonable one, since it appears to take no ef-

fect—to make no effective impression upon the minds of the others.

On the other hand, if a majority or even a lesser number of you are for acquittal, the other jurors ought seriously to ask themselves again, and most thoughtfully, whether they do not have a reason to doubt the correctness of a judgment which is not shared by several of their fellow jurors, and whether they should distrust the weight and sufficiency of the evidence which fails to convince several of their fellow jurors beyond a reasonable doubt.

Remember at all times that no juror is expected to render [sic] a conscientious conviction he or she may have as to the weight or effect of the evidence. But remember, also, that after full deliberation and consideration of the evidence in the case, it is your duty to agree upon a verdict if you can do so without surrounding [sic] your conscientious conviction. You must also remember that if the evidence in the case fails to establish guilt beyond a reasonable doubt, the accused should have your unanimous verdict of not guilty.

You may be as leisurely in your deliberations as the occasion may require and should take all the time which you may feel is necessary.

I will ask now that you retire once again and continue your deliberations with these additional comments in mind to be applied, of course, in conjunction with all of the instructions that I have previously given to you.

You will now retire to your room, ladies and gentlemen of the jury, for further deliberations.

7. THE COURT: Ladies and gentlemen of the jury, yesterday I gave you an instruction, and this more or less ties in with it to a certain extent, and I think maybe it will be of assistance to you.

The Court instructs the jury that when you have made findings as to any or all of the defendants and you desire to make that return to the Court, you may do so, but in any further deliberations you cannot revise or reconsider

tion, "if there is any verdict that the jury has not been able to agree upon unanimously." The foreman replied that they would reach a verdict on all of the counts "in a short time." The jury returned its verdict thirty-two minutes later.

We have said that "[a] calmly dispassionate balanced effort on the part of a trial judge to induce a verdict does not seem to us to invade the province of the jury." *United States v. Sawyers,* 423 F.2d 1335, 1341–42 (4th Cir.1970). In *Sawyers* we strongly recommended that future use of the *Allen* charge incorporate the Judicial Conference's recommendation that the majority and minority on a deadlocked jury be instructed to give equal consideration to each other's views. We subsequently recommended that the entire Judicial Conference version set forth in *Sawyers* at 1342 n. 7 be used. *See United States v. Davis,* 481 F.2d 425, 429 (4th Cir.), *cert. denied,* 414 U.S. 977, 94 S.Ct. 296, 38 L.Ed.2d 220 (1973); *United States v. Hogan,* 486 F.2d 222, 223 (4th Cir.1973), *cert. denied,* 415 U.S. 991, 94 S.Ct. 1591, 39 L.Ed.2d 888, 416 U.S. 941, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974). This recommendation became an admonition in *United States v. Stollings,* 501 F.2d 954, 956 (4th Cir.1974), where we said that "if the Allen charge is used, it should be used in a form no stronger or less balanced than the form prescribed in *Sawyers.*"

The defendants argue that the *Allen* charge used here was imbalanced because of its reference to the expense of the trial and a retrial. *See* note 5, *supra.* Although one of the purposes served by the *Allen* charge is "the avoidance of the societal costs of a retrial," *Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 551, 98 L.Ed.2d 568 (1988), its purposes do not necessarily determine its content. The length and expense of a trial may justify use of the *Allen* charge if the jury is having difficulty reaching a verdict, but it does not follow that the jury should be instructed to overcome its difficulties by considering a factor which it could not ap-

propriately consider in the first instance. *See United States v. Bonam,* 772 F.2d 1449, 1450 (9th Cir.1985) ("[T]he expense of trial should not play any part in the jury's important function of determining the guilt or innocence of a criminal defendant."). The Judicial Conference version of the *Allen* charge adopted in this Circuit makes no mention of societal costs, nor did the earlier version we approved in *Orton v. United States,* 221 F.2d 632 (4th Cir.), *cert. denied,* 350 U.S. 821, 76 S.Ct. 47, 100 L.Ed. 734 (1955).

We warned in *United States v. Stollings,* 501 F.2d at 956, that henceforth "we shall feel free to treat the giving of the Allen charge, in a form other than that we have repeatedly suggested, as reversible error if we deem it appropriate so to do." However, we find no reversible error here. The district court's reference to the costs of the trial and retrial, while improper, did not place undue emphasis on this factor when considered in the context of the entire instruction. Nor was it unduly coercive. The jury was twice cautioned not to surrender their conscientious convictions, and they were told that "[y]ou may be as leisurely in your deliberations as the occasion may require and should take all the time which you may feel is necessary." Since the jury deliberated for a total of approximately two hours after receiving the *Allen* charge, there is no evidence that it had a coercive effect. *See United States v. Martin,* 756 F.2d 323, 327 (4th Cir.1985) (en banc). While the district judge's supplemental instruction and inquiry of the foreman may have exhibited undue haste, we cannot say that he exceeded his discretion under the circumstances. *See Stollings,* 501 F.2d at 956.

The defendants' contention that they were improperly denied an opportunity to address the jury in regard to the *Allen* charge is meritless. The only authority they cite is Fed.R.Crim.P. 30, which entitles them to object to jury instructions; it does

any verdict accepted by the Court. Now, with that instruction, you may return to your room

to consider further of your verdict.

not entitle them to address the jury with their objections.

## VIII.

■ Thomas, Mills and West contend that the district court erred in imposing consecutive sentences for their RICO and RICO conspiracy convictions. They rely on *United States v. Sutton,* 642 F.2d 1001, 1040 (6th Cir.1980) (en banc), *cert. denied,* 453 U.S. 912, 101 S.Ct. 3144, 69 L.Ed.2d 995 (1981), which held that where the evidence used to prove violations of 18 U.S.C. §§ 1962(c) and (d) is identical, the two sentences must merge.

The Sixth Circuit is alone in taking this view. Other circuits which have addressed the issue have held that § 1962(c) and § 1962(d) satisfy the test of *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), for determining whether separate punishment may be imposed, "whether each provision requires proof of a fact which the other does not." *United States v. Watchmaker,* 761 F.2d 1459, 1477 (11th Cir.1985), *cert. denied,* 474 U.S. 1100, 1101, 106 S.Ct. 879, 880, 881, 88 L.Ed.2d 917 (1986); *United States v. Marrone,* 746 F.2d 957, 959 (3rd Cir.1984); *United States v. Bagaric,* 706 F.2d 42, 63–64 n. 18 (2nd Cir.), *cert. denied,* 464 U.S. 840, 917, 104 S.Ct. 134, 283, 78 L.Ed.2d 128, 261 (1983); *United States v. Rone,* 598 F.2d 564, 569–70 (9th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980). As explained in *Marrone,* 746 F.2d at 958–59: "An enterprise offense under § 1962(c) may be committed by an individual acting alone, while a conspiracy offense under § 1962(d) cannot; and an enterprise offense, unlike a conspiracy offense, requires commission of choate acts (conducting the affairs of an enterprise 'through a pattern of racketeering activity')."

■ We agree with the majority view that § 1962(c) and § 1962(d) satisfy the *Blockburger* test for consecutive sentencing. The defendants' sentences under these provisions were therefore proper. The district court erred, however, in sentencing Thomas for both his conspiracy conviction under 21 U.S.C. § 846 and his continuing criminal enterprise conviction under 21 U.S.C. § 848. He received concurrent ten-year sentences for these convictions, plus a $300,000 fine on the continuing criminal enterprise count. Since Congress did not intend that an individual be punished under both § 846 and § 848, Thomas's sentence for his conspiracy conviction under § 846 must be set aside. *United States v. Porter,* 821 F.2d 968, 978 (4th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988).

## IX.

■ West contends there was insufficient evidence to support forfeiture of his automobile and real estate. The evidence showed that West stored and sold drugs in his two houses and secured debts incurred in purchasing drugs with his 1957 Ford Thunderbird. This use of the houses afforded West a source of influence over the criminal enterprise, rendering them forfeitable under 18 U.S.C. § 1963(a)(2). By using his car as collateral for drug purchases, he maintained it in violation of the RICO statute, thereby rendering it forfeitable under 18 U.S.C. § 1963(a)(1).

■ West also argues that there was a "fatal variance" between the indictment and the jury instructions on forfeiture. The jury was instructed to find the defendants' property forfeitable if (1) it was "acquired or maintained" in violation of the RICO statute or (2) it afforded them a "source of influence" over the RICO enterprise. These two grounds for forfeiture correspond to subsections (1) and (2) respectively of the RICO forfeiture statute, 18 U.S.C. § 1963(a). Since the indictment only used the "source of influence" language of subsection (2), West contends the jury was permitted to find forfeiture on a basis not alleged in the indictment. However, the indictment stated that the property was subject to forfeiture "pursuant to Title 18, United States Code, Section 1963(a)" without specifically identifying subsection (2). The jury was therefore

properly instructed that they could find forfeiture under either subsection (1) or (2).

West contends that the district court erred in denying his motion to present evidence and argument on the issue of forfeiture after the jury returned its verdict but before it returned its special verdict on forfeiture. Questions concerning the order of proof and permission to reopen the evidence are within the trial court's discretion. *United States v. Bolt,* 776 F.2d 1463, 1471 (10th Cir.1985). Since West had ample opportunity to argue and present evidence on the forfeiture issue, we find no abuse of that discretion here.

### X.

The remaining assertions of error can be disposed of without extensive discussion.

In the absence of any showing of unfair surprise, we find no error in the district court's denial of Thomas' motion for a bill of particulars to discover the identities of unnamed "Known Individuals" referred to in the indictment. *See United States v. Jackson,* 757 F.2d 1486, 1491 (4th Cir.), *cert. denied,* 474 U.S. 994, 106 S.Ct. 407, 88 L.Ed.2d 358 (1985).

Because the indictment alleged that all four defendants "did combine and confederate to establish a criminal enterprise," Williamson was properly joined under Fed. R.Crim.P. 8(b). *See United States v. Porter,* 821 F.2d at 972.

West contends the district court erred in denying his motions for mistrial after he was observed by the jury being escorted into the courtroom in the custody of the marshals, and after he and Thomas were observed by the foreman of the jury during its deliberations being brought to the courthouse in shackles. After the second incident West and Thomas requested that a cautionary instruction be given to the foreman out of the presence of the other jurors. The court declined to do so, expressing the opinion that "any further discussion of it would ... bring it to the attention of the jury; and if it was in any way harmful, would tend to make it more harmful than it would be of assistance ..."

The district court acted within its discretion, and since West demonstrates no actual prejudice, we find no abuse of that discretion. *United States v. Diamond,* 561 F.2d 557, 559 (4th Cir.1977).

Williamson's contention that the testimony of witness Chester Brescia was insufficient to sustain his convictions for distribution of cocaine and marijuana because it was contradicted by another witness is meritless. Brescia testified that Williamson gave him a bag containing one pound of marijuana and one pound of cocaine; any contradiction of this testimony was for the jury to resolve.

Since Thomas made no showing of some special need to appear as co-counsel, we find no error in the district court's denial of his motion to participate in closing arguments. *United States v. Lang,* 527 F.2d 1264, 1265 (4th Cir.1975).

Finally, since Thomas fails to show any facts in dispute which would have justified instructing the jury on lesser included offenses of the continuing criminal enterprise charge, we find no error in the district court's refusal to do so. *See United States v. Blankenship,* 548 F.2d 1118, 1120 (4th Cir.1976).

### XI.

The case is remanded with directions that West's conviction on Count 57 be reversed and Thomas's sentence on Count 4 be vacated. In all other respects, the judgments of the district court are affirmed.