900 F.2d 256
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Peter CLARK, Defendant-Appellant.
 No. 89-5592.
 United States Court of Appeals, Fourth Circuit.
 Submitted Sept. 15, 1989.
Decided: March 26, 1990.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T.S. Ellis, III, District Judge. (CR-88-305-A)
 Joseph J. McCarthy, Dawkins, Hanagan, McCarthy & Sengel, Alexandria, V., for appellant.
 Henry E. Hudson, United States Attorney, Paul G. Cassell, Assistant United States Attorney, Alexandria, V., for appellee.
 E.D.Va.
 AFFIRMED.
 Before WIDENER, K.K. HALL, and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Peter Clark was convicted of possession with intent to distribute fifty grams or more of "crack" cocaine, in violation of 21 U.S.C. Sec. 841, and was sentenced to 121 months imprisonment. On appeal, he challenges various rulings of the trial court with regard to search and seizure, psychiatric evaluations, jury selection and evidentiary matters. Finding no error, we affirm.
 
 
 2
 * On December 8, 1988, Clark and two companions arrived in National Airport aboard the shuttle from New York City. Clark carried an athletic bag off the plane. After Clark made a telephone call, the three proceeded through the terminal. Two Drug Enforcement Agents approached Clark and one of his companions and asked if they would mind answering some questions. Clark's bag was eventually searched and approximately 500 grams of crack cocaine was discovered. He was arrested and later indicted.
 
 
 3
 Prior to trial, Clark moved to suppress the contents of his athletic bag. At the suppression hearing, one of the DEA agents, Dunn, testified that he was part of a drug interdiction task force working at the airport. Believing that Clark and his companions were looking around suspiciously and that they appeared nervous, he and his partner approached them and identified themselves as police officers. Dunn's partner began to speak to one of the companions, while Dunn spoke to Clark and one Winston Chun. At Dunn's request, Clark and Chun gave the agent their tickets. Neither party had identification. Clark stated that they were both from New York and that they intended to stay in Washington about a week. Clark also indicated that the athletic bag contained all the clothes he had with him.
 
 
 4
 Dunn then asked if they were carrying narcotics and each answered in the negative. The agent then asked Clark if he could search the bag and, according to the agent's testimony, Clark indicated that he could by nodding his head and handing him the bag. The narcotics were discovered at this point.
 
 
 5
 Clark also testified during the suppression hearing. He stated that he did not respond to the agent's request to search the bag and, instead, that the agent forcibly took the bag from his hand and searched it. The court denied the motion to suppress on the ground that an affirmative nod and handing over the bag was sufficient consent.
 
 
 6
 Less than two weeks prior to trial, Clark's attorney made an oral motion during a telephone conference for a competency hearing. This oral motion was followed by a written motion one week later. The defense attorney argued that Clark was unable to comprehend the consequences of refusing to enter into a plea agreement. This motion was denied, but a written order memorializing the denial was never entered.
 
 
 7
 During voir dire of the jury, the United States exercised a peremptory challenge to venireman Muhammad Ashraf, a former defense attorney from Pakistan. Asked to indicate a non-discriminatory reason for this strike,[1] the Assistant United States Attorney explained that the practice of his office was to strike all lawyers from jury panels.[2] The strike was upheld.
 
 II
 
 8
 On appeal, Clark contends that the DEA agents lacked reasonable suspicion to stop him at the airport and, therefore, the court erred in refusing to suppress the drugs found in his bag. He also contends that the court erred in denying his motion for a psychiatric examination. Clark further cites as reversible error the trial court's denial of his Batson motion during voir dire. Finally, he raises two evidentiary issues regarding the admissibility of certain testimony. We address each in turn.
 
 
 9
 The trial court found that the agents' stop of Clark was not a seizure. the court specifically found that the DEA agents did or said nothing which could be reasonably perceived as coercive and that Clark was free to terminate the encounter at any time. Further, the court found that Clark's affirmative nod to the agent's request to search the bag and his handing over of the bag amounted to a consent to the search.
 
 
 10
 The lower court's conclusion that a permissible encounter rather than a seizure has taken place is essentially a factual determination which must be upheld unless it is clearly erroneous. United States v. Gooding, 695 F.2d 78, 82 (4th Cir.1982). Similarly, the question of whether a defendant's consent to a search was voluntary is a factual one determinable by the court, as the trier of fact, in light of the totality of the circumstances. This factual determination also must be upheld unless clearly erroneous. United States v. Peterson, 524 F.2d 167, 178 (4th Cir.), cert. denied, 423 U.S. 1088 (1976), citing Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). Knowledge of the right to refuse consent is not a prerequisite to a valid consent. Schneckloth, 412 U.S. at 248-49.
 
 
 11
 The Fourth Amendment is not violated when law enforcement officers merely approach an individual in a public place and ask him if he is willing to answer some questions. Florida v. Royer, 460 U.S. 491, 497 (1983). The mere fact that a detective identifies himself as a police officer does not, without more, convert the encounter into a seizure implicating the Fourth Amendment. Id. To the contrary, a person approached in this way may legally disregard the questions and walk away. United States v. Mendenhall, 446 U.S. 544, 554 (1980).
 
 
 12
 In Mendenhall, the Court analyzed the airport encounter under a "not free to leave" test. The Court focused on whether a reasonable person would, under the circumstances of the encounter, believe that he was free to terminate the interview and leave. The inquiry here, therefore, is whether the DEA agent did or said anything before discovery of the cocaine which would, objectively viewed, have caused Clark to believe that he was not free to leave. Although other reasonable inferences could have been drawn from the circumstances surrounding Clark's encounter with the agent, after viewing the totality of the circumstances as revealed by the testimony developed at the evidentiary hearing, we cannot conclude that the district court's findings were clearly erroneous. We conclude that the circumstances of the encounter between Clark and the agent support the district court's decision that Clark was not seized and that Clark consented freely to the search of his athletic bag.
 
 III
 
 13
 The remaining assertions of error can be disposed of without extensive discussion.
 
 
 14
 Clark contends that his motion for a competency evaluation and hearing should have been granted unless it was deemed frivolous or in bad faith, and that the lower court's denial of the motion constituted reversible error. Since 1984, however, the standard for ruling on such motions is whether "there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. Sec. 4241(a); see generally 1 C. Wright, Federal Practice and Procedure Sec. 196 (1989 Supp.). The district judge had already been able to observe Clark during the suppression hearing held only a few days prior to the oral motion for the competency hearing and evaluation. United States v. West, 877 F.2d 281, 285 n. 1 (4th Cir.1989). We cannot say that the district court abused its discretion in denying the motion.
 
 
 15
 Clark's Batson argument is also meritless. During voir dire, the government defended its use of its strike on the grounds that the Pakistani venireman in question had been a criminal defense lawyer in Pakistan. The district court did not err in concluding that this explanation rebutted any inference of a racially-discriminatory intent.
 
 
 16
 Clark makes two evidentiary arguments which we have reviewed and which we find to be similarly without merit. We affirm the district court's order denying Clark's motion to suppress the evidence seized, and we affirm the conviction. We dispense with oral argument because the facts and legal arguments are adequately presented in the briefs and record and argument would not significantly aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 Clark is a black male
 
 
 [2]
 The government also struck the only other lawyer on the panel as well as a paralegal for a law firm