935 F.2d 1288
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Nickalaus Edward PHENICIE, Defendant-Appellant.
 No. 89-5247.
 United States Court of Appeals, Fourth Circuit.
 Argued March 8, 1991.
Decided June 20, 1991.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Salisbury. Hiram H. Ward, Senior District Judge. (CR-89-45-S)
 John David James, Smith, Patterson, Follin, Curtis, James, Harkavy & Lawrence, Greensboro, N.C., for appellant.
 John Warren Stone, Jr., Assistant United States Attorney, Greensboro, N.C. (Argued), for appellee; Robert H. Edmunds, Jr., United States Attorney, Greensboro, N.C., on brief.
 M.D.N.C.
 AFFIRMED.
 Before K.K. HALL, Circuit Judge, JAMES C. HILL, Senior United States Circuit Judge for the Eleventh Circuit, sitting by designation, and TERRENCE WILLIAM BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Nickalaus E. Phenicie appeals his conviction for conspiring to possess cocaine and distributing cocaine in violation of 21 U.S.C. Secs. 841(a)(1) and 841(b)(1)(B). He contends: (1) that it was error for the trial court to preclude defense counsel from cross-examining co-conspirator government witnesses about their understanding of the federal Sentencing Guidelines and about the sentences they might receive as a result of their cooperation with the government; (2) that there was a fatal variance between the crime charged in the indictment and the evidence presented at trial; (3) that he was sentenced improperly under the Sentencing Guidelines; and (4) that the guidelines are unconstitutional. We find the trial to be free of reversible error and therefore affirm.
 
 I.
 
 2
 Nickalaus Phenicie was indicted in the Middle District of North Carolina. Count One of the indictment charged that he and other defendants conspired together to possess with the intent to distribute and to distribute more than 500 grams of cocaine. Some of the co-defendants pled guilty pursuant to plea agreements. Phenicie and three other co-defendants were tried by a jury. That trial ended in a conviction for one of the defendants and mistrials for Phenicie and the other co-defendants. On August 21, 1989, Phenicie went to trial again on these charges. He was convicted on August 23, 1989. He was sentenced to 189 months.
 
 
 3
 At trial, numerous co-defendants testified against Phenicie. First, Danny Lanham testified that he bought cocaine from Nickalaus Phenicie, Randy Hughes and Gary Tunsky three times in May, 1987 at Randy Hughes' parents' home in Glen Burnie, Maryland. Some time after those transactions, Hughes and Tunsky were arrested. In June, 1987, Lanham spoke to Nickalaus Phenicie about Hughes' and Tunsky's arrests and about the further purchase of cocaine. Phenicie indicated that he was happy that they were arrested because he did not like the way they had set up their business. He also told Lanham that he would continue to supply him with cocaine. After this conversation, Lanham met with Nickalaus Phenicie and Phenicie's brother Chris at Lanham's town house in Glen Burnie, Maryland. At that time, Nickalaus delivered cocaine to Lanham, and told Lanham that if Lanham needed more cocaine, he, Nickalaus, would send the cocaine from his home in California to his brother Chris in North Carolina who would then take the cocaine to Maryland. Lanham testified that this arrangement continued until October, 1987 with about one cocaine deal a month. The business between Lanham and the Phenicies stopped in October after Lanham was arrested.
 
 
 4
 Chris Phenicie then testified that he received cocaine from his brother and his brother's roommate, Marty Matulis. This cocaine was distributed to customers in Maryland. Matulis testified that he was instructed by Nickalaus Phenicie to deliver the drugs to Chris Phenicie. Matulis delivered the cocaine because Nickalaus Phenicie was nervous about doing it himself because of Hughes' and Tunsky's arrests. Matulis delivered cocaine for Nickalaus Phenicie to Chris Phenicie twice between September and December, 1987. Between December, 1987 and April or May, 1988 Matulis and Chris Phenicie participated in three more transactions in which Matulis obtained cocaine not from Nickalaus Phenicie but from another source. In February, 1988, Chris and Nickalaus Phenicie discussed "getting back" into business together, and splitting the profits "fifty-fifty." From February, 1988 until August, 1988, Nickalaus sent cocaine from California to Chris Phenicie in North Carolina who then distributed it to customers in Maryland. In July, 1988, Nickalaus Phenicie also delivered cocaine to Matulis in New York so that Matulis could distribute it to customers in New York. On September 6, 1988, Chris Phenicie was arrested after the federal authorities intercepted a delivery of cocaine from California.
 
 
 5
 The co-defendants who testified either received the benefit of a plea bargain from the government or were told that the government could move the court to reduce their sentences based on their substantial assistance. Most of the witnesses admitted that the reason they were testifying was because they were hoping the government would move the court for a reduction of their sentence based on substantial assistance.
 
 II.
 
 6
 Appellant argues that the trial court erred in refusing to allow defense counsel to cross-examine government witnesses concerning their understanding of the Sentencing Guidelines and their expectations for a favorable sentence as a result of their cooperation with the government. Phenicie argues that this prevented him from establishing the powerful incentive these witnesses had for testifying against him. At the first trial, defense counsel was allowed to question witnesses in this regard. At the beginning of the second trial, the district judge told counsel that he was not going to allow any questioning of the witnesses about their understanding of the guidelines. The court stated:
 
 
 7
 Sentencing is a matter solely within the discretion of the Court. Now if some witness has entered a plea agreement, then I will let you go into what the plea agreement is and what benefit he might receive from the plea agreement. But as far as going into matters which show the jury what the amount of sentence is and so on, without it being involved in some type of plea agreement--that would be necessary to show some incentive on the part of the witness to speak untruthfully--I'm not going to allow it.
 
 
 8
 (J.A. 61.) The court allowed counsel to develop on crossexamination that the witnesses expected the government to report their cooperation to the court for consideration in reducing their sentences.
 
 
 9
 There is no evidence that Phenicie's counsel was not allowed to fully cross-examine the government witnesses about their plea agreements and the benefit that they would receive from testifying. Defense counsel was merely prevented from cross-examining a particular witness about how the Sentencing Guidelines would specifically apply to the witness's particular case and eliciting from him the amount of time he could expect under the guidelines. The court's ruling did not prevent Phenicie from impeaching the witnesses against him. The trial judge did not abuse his discretion in limiting this form of cross-examination.
 
 III.
 
 10
 Phenicie next argues that there is a fatal variance in the crime charged in the indictment and the evidence introduced at trial. He argues that the evidence at trial established that there were three separate conspiracies, but the indictment charges him with one conspiracy from May, 1987 to September, 1988. Phenicie claims that he withdrew from the first conspiracy between Randy Hughes, Danny Lanham, Gary Tunsky and himself after Tunsky and Hughes were arrested in June, 1987. Phenicie then maintains that there was a second conspiracy between Matulis and Chris Phenicie between June, 1987 and February, 1988, and a third conspiracy when he and Chris entered into an agreement.
 
 
 11
 The evidence presented at trial does not support this contention. Taken in the light most favorable to the government, the evidence proved that there was one conspiracy not three. Nickalaus Phenicie was directly involved with dealing drugs from May, 1987 through December, 1988. During that time he either delivered the cocaine himself or arranged for someone else to deliver it. Furthermore, the evidence did not show that Phenicie withdrew from the conspiracy in June after Hughes and Tunsky were arrested. In fact, the evidence suggests that he continued to be involved with the conspiracy after Hughes' and Tunsky's arrests. He continued the conspiracy by supplying cocaine to his brother through Matulis and then by entering into a new agreement in February, 1988 with his brother where they dealt directly with each other.
 
 
 12
 It is within the clear province of the jury to determine whether the evidence establishes a single conspiracy or multiple conspiracies. United States v. Lazano, 839 F.2d 1020, 1023 (4th Cir.1988). Further, once a conspiracy is established, it is presumed to continue until it is shown to be terminated by an affirmative action. United States v. Portsmouth Paving Corp., 694 F.2d 312, 318 (4th Cir.1982). The burden is on Phenicie to establish that he withdrew from the conspiracy by an affirmative action. A defendant cannot withdraw from a conspiracy by simply keeping a low profile and having other people deliver his drugs for him. There must be some evidence that the defendant acted to defeat or disavow the purposes of the conspiracy in order for that issue to be presented to the jury for their determination. United States v. West, 877 F.2d 281, 289 (4th Cir.1989); United States v. Urbanik, 801 F.2d 692, 697 (4th Cir.1986). The only evidence that Phenicie withdrew from the conspiracy was that he decided to "lie-low" for awhile and not deliver the drugs himself. There is no evidence that between June, 1987 and January, 1988, the dates of the alleged second conspiracy between Chris Phenicie and Matulis, that Nickalaus Phenicie ever took any affirmative steps to actually withdraw from, let alone any steps to defeat or disavow, the conspiracy. He continued to supply drugs to his brother through Matulis. The only change in his actions was that he did not deliver the drugs personally to his customers but instead used a "runner" to deliver the drugs. When viewed in the light most favorable to the government, the evidence at trial was clearly sufficient for a reasonable jury to find that Phenicie was involved in a single conspiracy, and therefore, there was no fatal variance between the evidence presented at trial and the crime charged in the indictment.
 
 IV.
 
 13
 The last issue presented is whether Phenicie was properly sentenced under the Sentencing Guidelines. He argues that because of the great disparity in the sentence he received and the sentences received by the rest of the co-conspirators his sentence was improper. All of the co-conspirators received a much lesser sentence than Phenicie. This disparity can easily be explained. Many of the co-defendants pled guilty pursuant to plea agreements and substantially assisted the government in the prosecution of Phenicie. One co-defendant assisted the government after he was convicted at the first trial. The government filed motions with the court to reduce those co-conspirators' sentences. At Phenicie's sentencing, the district judge acknowledged that the other co-defendants received lighter sentences, and stated that the sole reason was because they provided substantial assistance to the government.
 
 
 14
 Phenicie must do more than merely show that there was a disparity in the sentencing of the co-defendants. He must offer evidence that the trial judge abused his discretion. United States v. Owens, 902 F.2d 1154, 1157 (4th Cir.1990). Phenicie presented no evidence that the trial judge abused his discretion. In fact, the court recognized the disparity, but correctly attributed the reason to the other conspirators' cooperation with the government. Furthermore, the sentence which Phenicie received was within the guideline range for his offense level and criminal history category.
 
 
 15
 Phenicie also argues that the Sentencing Guidelines and the prosecutorial practices related to the guidelines are unconstitutional as a violation of due process. The United States Supreme Court has held that the Sentencing Guidelines as promulgated are constitutional. United States v. Mistretta, 109 S.Ct. 647 (1989). Thus, after Mistretta, a due process challenge to the guidelines cannot survive. United States v. Bolding, 876 F.2d 21 (4th Cir.1989).
 
 V.
 
 16
 Having considered and rejected each of Phenicie's assertions of error, we determine that the evidence was sufficient to support his conviction and his sentence was proper under the Sentencing Guidelines. Finding no error we affirm.
 
 
 17
 AFFIRMED.