972 F.2d 342
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gene Arthur BOYD, Defendant-Appellant.
 No. 91-5886.
 United States Court of Appeals,
Fourth Circuit.
 Argued: July 9, 1992
Decided: August 13, 1992
 
 Appeal from the United States District Court for the District of South Carolina, at Charleston.
 Edmund Heyward Robinson, SHIMEL, ACKERMAN, THEOS, SPAR & ROBINSON, for Appellant.
 Albert Peter Shahid, Jr., Assistant United States Attorney, for Appellee.
 John S. Simmons, United States Attorney, for Appellee.
 D.S.C.
 AFFIRMED.
 Before WILKINSON, WILKINS, and LUTTIG, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Appellant Gene Arthur Boyd challenges on several grounds his conviction for conspiracy to import cocaine, see 21 U.S.C. § 963. We discern no error by the district court, and therefore affirm.
 
 I.
 
 2
 In April 1990, Jimmy Narvaez, Martin Anaya, and several others began importing cocaine from Panama into the United States. See J.A. at 106-07. In October 1990, Anaya approached appellant Boyd and asked him to fly to Panama. Id. at 115-16, 178-79. He gave Boyd a plane ticket, $500 for a return flight, and a roll of cash. Id. at 119, 184. Boyd was to give the roll of cash to the Panamanians who would meet him and hand him a briefcase to bring back to the United States. See id. at 116-19, 184, 197. Boyd did as instructed except that, a few days after arriving in Panama, he decided to leave the briefcase behind. See id. at 187, 199. Boyd claims to have informed Narvaez of this decision, but not of the reasons for it, by telephone from Panama. See id. at 200-01, 241-42. All of the apprehended participants pled guilty except Boyd, whom a jury convicted of conspiracy to import cocaine on June 14, 1991.
 
 II.
 
 3
 The district court rejected Boyd's request for a jury instruction on withdrawal from the conspiracy because such an instruction was "not factually supported in this case." Id. at 271. Boyd contends that his testimony that he told Narvaez that he had decided to leave the briefcase behind makes the court's refusal to give a withdrawal instruction error. Appellant's Br. at 17-19. We disagree. Evidence of withdrawal is evidence of "affirmative action" by the defendant to "defeat or disavow the purposes of the conspiracy." United States v. West, 877 F.2d 281, 289 (4th Cir. 1989), cert. denied, 493 U.S. 1070 (1990); United States v. Urbanik, 801 F.2d 692, 697 (4th Cir. 1986). Boyd bore the burden of producing any such evidence, see id . at 697, and he failed to meet that burden. He conceded at trial that he never attempted to contact any law enforcement authority, J.A. at 245, and that he never confronted Narvaez about the cocaine he suspected was in the briefcase. See id. at 242. Nor did Boyd ever communicate withdrawal " 'in a manner reasonably calculated to reach co-conspirators,' " United States v. Wooten, 688 F.2d 941, 946 (4th Cir. 1982) (quoting United States v. United States Gypsum Co., 438 U.S. 422, 464 (1978)), for even he does not claim to have explained to Narvaez or Anaya why he decided to leave the briefcase in Panama. See J.A. at 200-01, 24142. The mere fact that he was not going to return with the briefcase is fully consistent with an intention to remain in the conspiracy; for example, he may have decided as he did simply because he feared arrest at that particular time. Indeed, there was testimony that "problems in Panama" had prevented Boyd from bringing the briefcase back to the United States. See id. at 130.
 
 
 4
 Finally, as this court has previously noted: "We do not believe it is plain error for a trial court to fail to instruct a jury on an optional defense when the testimony of the defendant himself is inconsistent with the defense offered." United States v. Williams, 604 F.2d 277, 281 (4th Cir.), cert. denied, 444 U.S. 967 (1979). Boyd's defense at trial was that he had never joined the drug conspiracy: he repeatedly denied, for instance, that his purpose in going to Panama was to collect cocaine, see J.A. at 211, 217-21, 246-48. We cannot say that the district court erred in declining to instruct the jury as to Boyd's withdrawal from the conspiracy, which he insisted that he had never joined.
 
 III.
 
 5
 Midway through trial, Boyd moved for a mistrial to send an investigator to Panama to try to locate a witness to the phone conversation in which he refused to bring the briefcase back to the United States. J.A. at 70-72. The district court denied his motion, id. at 137, and Boyd argues that the court committed reversible error in doing so, Appellant's Br. at 20-21. Reviewing the district court's decision for abuse of discretion, see United States v. Jackson, 757 F.2d 1486, 1492 (4th Cir.), cert. denied, 474 U.S. 994 (1985), we reject that argument. Boyd knew neither the names of the Panamanians he met nor whether they would cooperate if he managed to locate them. See J.A. at 90. Nor would corroboration of his conversation with Narvaez be exculpatory evidence, for as we explained in part II, supra, that conversa tion was not evidence of withdrawal. Like the defendant in Jackson, Boyd "failed to show that the trial court abused its discretion because no evidence exists in the record to show that [the witness sought] was prepared to give exculpatory testimony." 757 F.2d at 1492.
 
 IV.
 
 6
 At the outset of the trial, Boyd made a motion in limine to exclude acts and statements of the other conspirators before his involvement in the conspiracy and after his alleged withdrawal. J.A. at 13-14. At that point, Narvaez too was on trial, and the district court admitted the evidence, while agreeing to give a limiting instruction as to statements made by coconspirators before Boyd's participation. See id. at 19-20. When Narvaez pled guilty midway through the trial, Boyd moved for a mistrial, arguing that evidence admitted against Narvaez should have been excluded. See id. at 69-70. Finding that the evidence was relevant to the conspiracy and could be cured by a curative instruction, the district court denied Boyd's motion. Id. at 91. The court instructed the jury as follows:
 
 
 7
 In determining whether a conspiracy existed, the jury should consider the actions and declarations of all of the alleged conspirators; however, in determining whether Mr. Boyd was a member of the conspiracy, if the jury finds that the conspiracy existed, the jury should consider only Mr. Boyd's statements and the facts pertaining to him, and the defendant cannot be bound by the acts or declarations of other participants until it is established that a conspiracy existed and that he was one of the members.
 
 
 8
 In your consideration of the evidence, you should first determine whether or not the conspiracy existed as alleged in the indictment. If you conclude that the conspiracy did exist, you should next determine whether or not Mr. Boyd willfully became a member of the conspiracy.
 
 
 9
 Id. at 289-90.
 
 
 10
 Boyd contends that the district court erred in not granting a mistrial or, in the alternative, in not giving an instruction specifically forbidding the jury to consider evidence beyond the time of his participation. Appellant's Br. at 24. In particular, Boyd argues that evidence of other cocaine-importing trips to Panama should have been excluded because he neither participated in, nor knew of, those trips. See id. at 23-24. We disagree.
 
 
 11
 By agreeing to fly to Panama and to give the cash to the Panamanians, and by in fact doing so, Boyd committed overt acts in furtherance of the conspiracy. His membership is presumed to continue until he shows that he withdrew by affirmatively acting to defeat or disavow the purposes of the conspiracy. See West, 877 F.2d at 289. And as we explained in part II, supra, Boyd introduced no evidence of withdrawal.* In West, for example, the defendant was held responsible for a drug transaction by the conspiracy that occurred after he had been arrested and incarcerated. "[E]vidence of that transaction was relevant to proving the scope of the conspiracy's activities," held the court, and thus "was properly admitted." 877 F.2d at 290. That Boyd stopped participating after returning from Panama neither protects him from liability nor makes the evidence as to the scope of the conspiracy inadmissible. That the district court instructed the jury not to consider coconspirators' acts or statements "until it is established that a conspiracy existed and that he was one of the members," J.A. at 290, confirms our conclusion that the court did not err.
 
 CONCLUSION
 
 12
 For the reasons stated herein, we affirm the judgment of the district court.
 
 AFFIRMED
 
 
 *
 Even if Boyd had shown withdrawal, this "could not erase his earlier participation in the conspiracy ... nor immunize him from responsibility as a co-conspirator for his actions in pursuance of the conspiracy prior to [withdrawal]." Wooten, 688 F.2d at 947. By contending at oral argument that withdrawal was a complete defense to the charge of conspiracy, Boyd appears to have misunderstood the law of conspiracy