**Leroy BOONE, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

No. CIV. 2:96CV372.
No. CRIM. 2:90CR149.

United States District Court,
E.D. Virginia,
Norfolk Division.

Oct. 23, 1998.

---

### MEMORANDUM OPINION AND FINAL ORDER

JACKSON, District Judge.

This matter is before the Court on Petitioner's *pro se* motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. Both parties have submitted briefs on the relevant issues; thus, the matter is ripe for judicial determination. For the reasons set forth below, Petitioner's motion is **DENIED.**

### I. FACTUAL AND PROCEDURAL HISTORY

Petitioner was indicted by a Federal Grand Jury in the Eastern District of Virginia on November 30, 1990. On March 29, 1991, Petitioner was found guilty by a jury of one count of conspiracy to commit aggravated bank robbery, in violation of 18 U.S.C. § 371, two counts of armed bank robbery, in violation of 18 U.S.C. § 2113(d), and two counts of use of a firearm in commission of a violent crime, in violation of 18 U.S.C. § 924(c)(1). On June 10, 1991, the Court, Judge John A. MacKenzie presiding, sentenced Petitioner to serve a term of 308 months imprisonment for these offenses.

Petitioner appealed his convictions and sentences, and he asserted the following claims: (1) errors in evidentiary rulings, (2) his offense level was improperly enhanced

for a leadership role and obstruction of justice, and (3) ineffective assistance of counsel. On June 8, 1993, the United States Court of Appeals for the Fourth Circuit affirmed Petitioner's convictions and sentences.

On December 22, 1993, Petitioner filed his first § 2255 motion to vacate, set aside or correct his sentence. Petitioner alleged in this motion that he had ineffective assistance of counsel and that the government withheld exculpatory evidence. On February 9, 1994, Petitioner's § 2255 motion was dismissed. Petitioner appealed the denial of his motion, and the Fourth Circuit affirmed the denial on September 27, 1994.

On January 23, 1995, Petitioner filed another § 2255 motion to vacate, set aside or correct his sentence. Petitioner made two claims in this motion: (1) a violation of the Agreement on Detainers Act, and (2) ineffective assistance of counsel. This motion was dismissed on February 28, 1995. Petitioner appealed the denial of his motion, and the Fourth Circuit affirmed the denial on October 4, 1995.

On April 8, 1996, Petitioner filed this § 2255 motion to vacate, set aside or correct his sentence. Petitioner made eight claims in this motion: (1) double jeopardy, (2) the Court's failure to dismiss a count, (3) Petitioner received an improper sentencing enhancement for a leadership role, (4) error in allowing 404(b) evidence at trial, (5) ineffective assistance of counsel, (6) the Court should have given Petitioner a downward departure in sentencing because of his diminished capacity, (7) double counting was used in figuring Petitioner's sentence, and (8) Petitioner's criminal history category was incorrectly calculated. On April 25, 1996, Petitioner filed an addendum to his § 2255 motion to vacate, set aside or correct his sentence. Petitioner claimed in this addendum that his convictions for use of a firearm in commission of a violent crime should be overturned under *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). On July 31, 1996, the Court dismissed Petitioner's motion without prejudice, ruling that as the motion was successive, authorization from the Fourth Circuit Court of Appeals was required before filing. Peti-

tioner appealed the dismissal, and on February 25, 1998, the Fourth Circuit vacated and remanded for further proceedings, ruling that as Petitioner's filing predated the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, authorization was not required. *United States of America v. Leroy Boone*, 135 F.3d 770, 1998 WL 77884 (4th Cir.1998) (unpublished). On April 24, 1998, the Court ordered the United States Attorney to file an answer or other pleading in response to Petitioner's § 2255 motion and addendum. The United States Attorney filed an answer to Petitioner's § 2255 motion on May 22, 1998. On June 8, 1998, Petitioner filed a reply to the Government's answer. Accordingly, the Court will proceed with consideration of Petitioner's motion.

## II. LEGAL STANDARD

On a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence, the Petitioner bears the burden of proving his grounds for collateral attack by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir.1958); *Vanater v. Boles*, 377 F.2d 898, 900 (4th Cir.1967); *United States v. Bondurant*, 689 F.2d 1246, 1251 (5th Cir.1982); *Polizzi v. United States*, 926 F.2d 1311, 1321 (2nd Cir.1991). Petitioner may attack the sentence imposed on the grounds that: (1) the "sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," and (3) "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255.

The Court need not hold a hearing in deciding a § 2255 motion if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.* Accordingly, the Court finds that a hearing is not necessary to properly address Petitioner's § 2255 motion.

## III. DISCUSSION

### A. Barred Claims

Petitioner claims, *inter alia*, that (1) the Court should have dismissed one of the

armed robbery counts because Petitioner withdrew from the robbery, (2) Petitioner received an improper sentencing enhancement for a leadership role, (3) 404(b) evidence was erroneously allowed at trial, (4) the Court should have given Petitioner a downward departure in sentencing because of his diminished capacity, and (5) double counting was used in figuring Petitioner's sentence. These claims are clearly nonconstitutional in nature. *See, e.g., United States v. Rowland,* 848 F.Supp. 639, 641 (E.D.Va. 1994). Petitioner could have raised each of these claims on direct appeal, but he failed to do so.[1]

█ It has long been established that motions under 28 U.S.C. § 2255 "will not be allowed to do service for an appeal." *Sunal v. Large,* 332 U.S. 174, 178, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947). "For this reason, nonconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." *Stone v. Powell,* 428 U.S. 465, 477 n. 10, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *see United States v. Emanuel,* 869 F.2d 795, 796 (4th Cir.1989) (claim that sentencing court did not comply with Federal Rule of Criminal Procedure 32 was waived when not raised on appeal). Because Petitioner failed to seek review of these claims on direct appeal, he has waived them. *See id.* Therefore, the aforementioned nonconstitutional claims must fail under this rationale.

█ Furthermore, the following errors asserted by Petitioner in his motion were not raised at trial or at sentencing[2]: (1) the Court's failure to dismiss one of the armed robbery counts because Petitioner withdrew from the robbery, (2) 404(b) evidence was erroneously allowed at trial, (3) the Court should have given Petitioner a downward departure in sentencing because of his dimin-

ished capacity, and (4) double counting was used in figuring Petitioner's sentence. Petitioner must meet the two part "cause and actual prejudice" standard in order to obtain relief for these claimed errors. *See United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Under this test, to obtain collateral review based upon errors by the trial court to which no contemporaneous objection was made, Petitioner must demonstrate both "cause" excusing his double procedural default and "actual prejudice" resulting from the errors of which he complains. *Id.* This standard presents a "significantly higher hurdle than would exist on direct appeal." *Id.* at 166, 102 S.Ct. 1584.

█ The only evidence that Petitioner offers to demonstrate "cause" for his double procedural default is that these claims were not raised due to ineffective assistance of counsel. *See* Petitioner's Memorandum of Law at 11. The Supreme Court has clearly stated that attorney error short of ineffective assistance of counsel does not constitute cause for failure to raise an issue prior to § 2255 review. *See Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *see also United States v. Breckenridge,* 93 F.3d 132, 134 n. 1 (4th Cir.1996). As discussed, *infra,* the Court finds Petitioner's ineffective assistance of counsel claim to be without merit. Therefore, Petitioner has not met his burden of proving "cause" for his double procedural default. Because Petitioner did not satisfy the first prong of the "cause and actual prejudice" test, the Court need not address whether there was "actual prejudice" resulting from the errors of which he complains.

Assuming that Petitioner could establish any of the five nonconstitutional claims listed at the beginning of Part III.A, he is not

---

1. As previously stated, one of the issues Petitioner raised on direct appeal was whether this Court correctly applied a sentencing enhancement for Petitioner's leadership role. However, at oral argument the United States withdrew its cross-appeal that this Court improperly refused to impose mandatory consecutive sentences of five years and twenty years, respectively, for the two gun violations required by 18 U.S.C. § 924(c)(1). Consequently, Petitioner withdrew his appeal on this sentencing issue to avoid ex-

posing himself to a longer sentence than he was given. *See United States v. Boone,* 993 F.2d 1539, 1993 WL 192513, at *3 (4th Cir.1993) (unpublished).

2. The Court notes that Petitioner objected to enhancements for a leadership role at his sentencing hearing on June 10, 1991. *See* Transcript of June 10, 1991 Sentencing Hearing at 4–18. Petitioner's objection was overruled. *See id.* at 18.

entitled to collateral relief unless the violation of federal law amounts to " 'a fundamental defect which inherently results in a complete miscarriage of justice.' " *Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974) (quoting *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)). Nonconstitutional errors must present " 'exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.' " *Id.* (quoting *Hill,* 368 U.S. at 428, 82 S.Ct. 468). A review of each of Petitioner's aforementioned grounds for relief reveals that his assertions lack merit. Because Petitioner has not proven any nonconstitutional error, the Court need not consider whether the claimed errors are "fundamental defects" which resulted in "a complete miscarriage of justice."

### 1. The Court's Failure to Dismiss an Armed Robbery Count

■ Petitioner asserts that he withdrew from the bank robbery of August 20, 1990, and that the Court should have dismissed Count Ten, armed bank robbery on or about August 20, 1990. *See* Petitioner's Memorandum of Law at 4. An individual's "membership in a conspiracy is presumed to continue until he withdraws from the conspiracy by affirmative action." *United States v. West,* 877 F.2d 281, 289 (4th Cir.1989). To prove withdrawal, Petitioner must provide evidence that he "acted to defeat or disavow the purposes of the conspiracy." *Id.* In support of his argument, Petitioner cites to the testimony of Joshua Anderson, Christopher Moore[3], Paul Gibson, and Brenda Walker. The cited testimony of Joshua Anderson merely proves that Petitioner was not present during certain conversations about bank robberies, and that Petitioner was the one who checked out the bank that was robbed, but said that the

bank "wasn't all right."[4] *See* Trial Record at 218, 222, 225–26, 228. Paul Gibson testified that Petitioner was not involved in the robberies. *See id.* at 332. However, Gibson's assertion conflicts with the overwhelming evidence implicating Petitioner in the robberies, and this claim is not substantiated by any other evidence. Finally, Petitioner asserts (without citing to the Record) that Brenda Walker (the bank teller) testified that he was not the man who robbed her. *See* Petitioner's Memorandum of Law at 5. Whether Petitioner was a member of the conspiracy was a question for the jury, and at trial the jury concluded that he was such a member. The evidence Petitioner asserts is clearly insufficient to show that he "acted to defeat or disavow the purposes of the conspiracy." *See West,* 877 F.2d at 289. Therefore, Petitioner's claim that he withdrew from the conspiracy lacks merit.

### 2. Sentencing Enhancement for a Leadership Role

■ Petitioner argues that the Court erred in applying a four-level enhancement for a leadership role. In support of this claim, Petitioner cites to testimony from coconspirators Joshua Anderson, Christopher Moore, Fred Brown, and Paul Gibson. *See* Petitioner's Memorandum of Law at 6–7. In particular, Christopher Moore testified that Paul Gibson was the leader of the conspiracy.[5] *See* Trial Record at 275. Nonetheless, the commentary to the Sentencing Guidelines clearly states that there can be "more than one person who qualifies as a leader or organizer" of a conspiracy. U.S. Sentencing Guidelines Manual § 3B1.1(a) cmt. 4 (1997). Thus, Petitioner is eligible for the four-level enhancement for a leadership role.

■ Furthermore, the factors the Court should consider in assessing whether Peti-

---

**3.** The Court notes that the cited testimony of Christopher Moore is irrelevant to the issue of whether Petitioner withdrew from the conspiracy on August 20, 1990. Thus, the Court need not discuss his testimony.

**4.** In fact, Petitioner asserts in his § 2255 motion that he told his coconspirators "NOT TO ROB [the bank]: IT IS NOT COOL TO ROB THAT BANK." Petitioner's Memorandum of Law at 4.

**5.** The cited testimony of Joshua Anderson and Fred Brown merely proves that Petitioner was not a party to certain conversations about robberies. *See* Trial Record at 221–22, 299, 305. As previously discussed, Paul Gibson's testimony consisted of an unsubstantiated assertion that Petitioner was not involved in the robberies. *See id.* at 332.

tioner was a leader or organizer include: the exercise of decision making authority, the nature of participation in the commission of the offense, the degree of participation in planning or organizing the offense, and the degree of control and authority exercised over others. *See id.* In this case, Petitioner provided his coconspirators with a place to live and a place to meet and plan the robberies. *See* Trial Record at 224, 249, 251, 252–53. Petitioner also provided the shotgun used in the robberies by coconspirator Fred Brown, and Petitioner retrieved the shotgun for the next robbery after being told by Brown where the shotgun was hidden. *See id.* at 75–77, 105, 144, 311–14. Furthermore, Petitioner dropped his coconspirators off at a bank to be robbed, drove the getaway car in another robbery, and in one instance, his coconspirators retreated to Petitioner's house after a robbery where the money was divided. *See id.* at 262, 304, 310, 315. Finally, Petitioner "cased" one of the banks and advised his coconspirators not to rob the bank because of police presence. *See id.* at 226, 255. Petitioner was advising his coconspirators that the bank he "cased" was not a good place to pull a robbery, and this kind of insight and leadership was valuable to his coconspirators. The aforementioned factors listed in the commentary to the Sentencing Guidelines are present in Petitioner's case. Thus, it is clear from the evidence at trial that Petitioner's four-level enhancement for a leadership role was proper.

### 3. Rule 404(b) Evidence

 Petitioner claims that the Court erred in admitting evidence that he and his coconspirators robbed banks to buy crack for resale. The source of this information was Christopher Moore. However, none of this information was admitted into evidence at trial. The jury was dismissed prior to any testimony by Christopher Moore regarding drugs, and Judge MacKenzie heard the proposed testimony from Moore out of the presence of the jury. *See id.* at 263–66. There is

nothing in the trial record indicating that the jury heard any evidence from Christopher Moore that the motive for the bank robberies was to buy crack for resale. Moore merely testified that Petitioner and his coconspirators were "going to get out of the robbery business and start selling drugs." *Id.* at 250; *see also id.* at 278. Moreover, Moore's testimony is not the type of evidence barred by Rule 404(b). *See* Fed.R.Evid. 404(b). Therefore, there is no basis for this argument.[6]

### 4. Downward Departure in Sentencing for Diminished Capacity

 Petitioner claims that the Court erred in not giving him a downward departure because of diminished capacity under United States Sentencing Guidelines § 5K2.13. Petitioner has not set forth any articulable facts sufficient to substantiate his claim of diminished capacity. In support of this claim, Petitioner refers to an examination conducted at Butner Federal Correctional Institution in 1991. *See* Petitioner's Memorandum of Law at 14. However, Petitioner relies on the Presentence Report in referring to the results of this examination as "unremarkable." *See id.* Furthermore, Petitioner does not fall within the scope of § 5K2.13. This section of the Sentencing Guidelines provides:

> If the defendant committed a *non-violent offense* while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

U.S. Sentencing Guidelines Manual § 5K2.13 (1997) (emphasis added). In short, Petitioner's convictions for conspiracy to commit aggravated bank robbery, the two counts of armed bank robbery, and the two counts of

---

6. Petitioner also makes the argument that the Court erred in allowing this evidence under Rule 403. *See* Petitioner's Memorandum of Law at 9–10. Similarly, this argument fails as the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, confusion, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. *See* Fed.R.Evid. 403.

using a firearm in the commission of a crime of violence are not non-violent crimes. Therefore, Petitioner does not qualify for a § 5K2.13 downward departure.

### 5. Double Counting in Figuring Petitioner's Sentence

■ Petitioner argues that the use of two sections of the Sentencing Guidelines constitutes double counting in figuring his sentence. *See* Petitioner's Memorandum of Law at 15. Specifically, Petitioner claims that it was inappropriate for the court to apply both § 2B3.1(b)(1) and § 2B3.1(b)(7)(B).[7] *See id.* These two sections are used to determine the base offense level for the object of the conspiracy, aggravated bank robbery. Each subsection of § 2B3.1(b)(1) of which Petitioner complains provides for separate and additional point increases if a defendant meets the criteria set forth in such subsections. Section 2B3.1(b)(1) provides for a two level increase if a financial institution's property was taken. *See* U.S. Sentencing Guidelines Manual § 2B3.1(b)(1) (1997). In this case, money was stolen from two banks in Virginia Beach. Section 2B3.1(b)(7)(B) provides for additional point increases based upon the amount of loss in dollars. *See id.* at § 2B3.1(b)(7)(B). The addition of another point to the base offense level of twenty was required because the amount of loss in this case exceeded $10,000, but was less than $50,000. *See id.* Therefore, there was no double counting in figuring Petitioner's sentence.

### B. Petitioner's Criminal History Category was Correctly Calculated

Petitioner argues that he should not have been sentenced as a career offender with a criminal history category of VI. *See* Petitioner's Memorandum of Law at 15. This claim is moot as Petitioner was not sentenced as a career offender. In fact, the Court addressed this issue at the sentencing hearing and Petitioner's attorney, the United States, and the probation officer all agreed that Petitioner did not qualify for career offender status. *See* Transcript of June 10, 1991 Sentencing Hearing at 3–4. As a result, Petitioner's criminal history category was changed to IV. *See* Government's Response to Petitioner's Motion at 26.

### C. Petitioner's Fifth Amendment Right Against Double Jeopardy was Not Violated

Petitioner appears to argue that his right against double jeopardy was violated because he was convicted and sentenced on the conspiracy count, the two armed robbery counts (combined as one), and the two § 924(c) counts (combined as one). *See* Petitioner's Memorandum of Law at 1–3. Thus, there appears to be two double jeopardy claims: (1) Petitioner was convicted and sentenced for the conspiracy and the underlying crimes, and (2) Petitioner was convicted and sentenced for armed bank robbery and for the use of a firearm in the commission of a violent crime.

The Double Jeopardy Clause of the Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. There are two distinct components to this constitutional guarantee: "The first provides protection against the imposition of cumulative punishments for the 'same offense' in a single criminal trial; the second against being subjected to successive prosecutions for the 'same offense,' without regard to the actual imposition of punishment." *United States v. Ragins*, 840 F.2d 1184, 1187 (4th Cir.1988) (citing *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977)). In this case, the Court is only concerned with Petitioner's multiple punishment protection.

■ In the multiple punishments context, "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). The *Blockburger* test is used to determine whether the legislature intended multiple punishments for the same episode of

---

7. The Court notes that Petitioner cited to § 2B3.1(b)(6)(B). *See* Petitioner's Memorandum of Law at 15. However, after reviewing the Sentencing Guidelines, the Court determined that the appropriate section of which Petitioner complains is § 2B3.1(b)(7)(B).

criminal conduct. *See United States v. Luskin*, 926 F.2d 372, 377 (4th Cir.1991). As long as each crime "requires proof of an additional fact which the other does not," it is presumed that the legislature intended multiple punishments. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Nonetheless, the *Blockburger* test is simply a "rule of statutory construction," a guide to determining whether the legislature intended multiple punishments. *Hunter*, 459 U.S. at 366, 103 S.Ct. 673. If the legislative intent to impose multiple punishments is clear, there is no double jeopardy problem. *See id.* at 368–69, 103 S.Ct. 673.

■■■■■ Petitioner alleges that his convictions for conspiracy to commit robbery and for two counts of armed robbery constitutes double jeopardy. The Supreme Court has clearly stated that "the commission of a substantive offense and a conspiracy to commit it are separate and distinct crimes, and a plea of double jeopardy is no defense to a conviction for both." *Pereira v. United States*, 347 U.S. 1, 11, 74 S.Ct. 358, 98 L.Ed. 435 (1954); *see United States v. Felix*, 503 U.S. 378, 389–92, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992). Petitioner's double jeopardy protection is violated only if the substantive offenses and the conspiracy are identical. *See Pereira*, 347 U.S. at 11, 74 S.Ct. 358. An element of the conspiracy charge in this case was an agreement by two or more persons to "take and obtain by force, violence and intimidation," money from a bank insured by the FDIC. *See* Trial Record at 424. In contrast, the armed robbery counts do not require more than one person for their commission. *See* Trial Record at 419–20. Thus, the charge of conspiracy required proof not essential to the convictions for armed robbery—namely, that there was an agreement to accomplish a common unlawful plan. Because the elements for conspiracy and the elements for armed robbery are not identical, this particular double jeopardy claim must fail.

■■■■■ Petitioner also appears to claim that his right against double jeopardy was violated by being convicted and sentenced on the armed robbery counts (combined as one) and on the § 924(c) counts (combined as one). However, the wording of § 924(c) is unambiguous. This statute states that whenever a person commits a crime of violence and uses or carries a firearm in the commission of such crime, the person shall be sentenced to a prison term that runs consecutive to the person's sentence for the underlying crime of violence, and consecutive to all other sentences. *See* 18 U.S.C.A. § 924(c)(1) (West Supp.1997) ("nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence . . . in which the firearm was used or carried"). The Fourth Circuit stated that "[o]ther circuits have agreed that there is no ambiguity in this subsection and that this is the only interpretation possible." *Luskin*, 926 F.2d at 376 (citing *United States v. Nabors*, 901 F.2d 1351, 1358 (6th Cir.1990); *United States v. Fontanilla*, 849 F.2d 1257, 1258 (9th Cir.1988)). It is clear from the statutory language of § 924(c) that the legislature intended multiple punishments for the same episode of criminal conduct. Therefore, this particular double jeopardy claim must also fail.

## D. Ineffective Assistance of Counsel

Petitioner alleges that his attorney was ineffective because he did not raise the following claims: (1) the Court should have dismissed one of the armed robbery counts because Petitioner withdrew from the robbery, (2) Petitioner received an improper sentencing enhancement for a leadership role, (3) 404(b) evidence was erroneously allowed at trial, (4) the Court should have given Petitioner a downward departure in sentencing because of his diminished capacity, (5) double counting was used in figuring Petitioner's sentence, (6) Petitioner's criminal history category was incorrectly calculated, and (7) Petitioner's double jeopardy right was violated. *See* Petitioner's Memorandum of Law at 11–13.

The Sixth Amendment to the United States Constitution guarantees the accused the right to effective assistance of counsel in all criminal prosecutions. *See McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct.

1441, 25 L.Ed.2d 763 (1970). To prove ineffective assistance of counsel, a litigant must prove both deficient performance and prejudice. *See Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove deficient performance, a litigant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. That is, a litigant must show that counsel's performance fell below an objective standard of reasonableness. *See id.* at 688, 104 S.Ct. 2052. To prove prejudice, the litigant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. Failure to meet either prong defeats a litigant's ineffective assistance of counsel claim. *See id.* at 700, 104 S.Ct. 2052. The Court need not address both components of the test if the litigant makes an insufficient showing on one part of the test. *See id.* at 697, 104 S.Ct. 2052.

■ The performance of Petitioner's attorney was not deficient. As previously discussed, all of the issues Petitioner argues that his counsel should have raised at trial, sentencing, or on appeal are without merit. *See* discussion *supra* Parts III.A–C. Thus, counsel's conduct was reasonable in not raising these claims on behalf of Petitioner. Accordingly, Petitioner's claim must fail under the standard set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, because he cannot prove that counsel's performance fell below an objective standard of reasonableness.

**E. Petitioner's Conviction Under 18 U.S.C. § 924(c) as an Aider and Abettor is Valid**

Petitioner argues that it was improper for the trial court to give an aiding and abetting instruction, and he argues that the decision in *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), should be applied to Petitioner, thus serving to vacate

his convictions. *See* Petitioner's § 2255 Addendum at 1–3.

■ Petitioner was not charged in any of the counts in the indictment for a violation of 18 U.S.C. § 2, aiding and abetting. However, Petitioner can still be convicted of aiding and abetting even though he was not charged in the indictment with this offense. *See Pigford v. United States,* 518 F.2d 831, 834 (4th Cir.1975) ("since Section 2 applies implicitly to all federal offenses, all indictments and informations are to be read as if the alternative provided for in Section 2 were embodied in each count thereof"). Since 18 U.S.C. § 2 applies "implicitly to all federal offenses," Petitioner can be convicted of aiding and abetting an 18 U.S.C. § 924(c) charge. *Id.* The Government must show that a defendant knowingly associated himself with a criminal and participated in the criminal venture in order to prove the crime of aiding and abetting. *See United States v. Winstead,* 708 F.2d 925, 927 (4th Cir.1983) (citing *Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949)). To prove the element of association, the Government must show that the defendant shared in the principal's criminal intent. *See id.* In other words, there must be evidence that the defendant was aware of the principal's criminal intent. *See id.*

■ There is sufficient evidence in this case to prove that Petitioner aided and abetted the 18 U.S.C. § 924(c) charge. Petitioner provided his coconspirators with a place to live and a place to meet and plan the robberies. *See* Trial Record at 224, 249, 251, 252–53. Most importantly, Petitioner provided the shotgun used in the robberies by coconspirator Fred Brown, and Petitioner retrieved the shotgun for the next robbery after Brown told Petitioner where the shotgun was hidden. *See id.* at 75–77, 105, 144, 311–14. Furthermore, Petitioner dropped his coconspirators off at a bank to be robbed, drove the getaway car in another robbery, and in one instance, his coconspirators retreated to Petitioner's house after a robbery where the money was divided. *See id.* at 262, 304, 310, 315. Thus, it is clear that Petitioner knowingly associated himself with criminals and participated in a criminal ven-

ture. Specifically, Petitioner aided and abetted the 18 U.S.C. § 924(c) charge by supplying the shotgun used in certain robberies.

Petitioner further argues that his § 924(c) convictions must be vacated because this Court misinstructed the jury in light of *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). However, Petitioner's counsel made no objections to the § 924(c) instructions at the time the Court reviewed these instructions with counsel. *See* Trial Record at 350–51. The Federal Rules of Criminal Procedure state that a proper objection to an erroneous jury instruction must be made "before the jury retires to consider its verdict." Fed. R.Crim.P. 30. Nonetheless, the issue of an erroneous jury instruction my be raised on appeal if there were "[p]lain errors or defects affecting substantial rights." Fed.R.Crim.P. 52(b). Thus, a review of Petitioner's § 924(c) convictions must be for plain error under Rule 52(b).

In order to establish that there was plain error, Petitioner must show that an error occurred, that the error was plain, and that the error affected his substantial rights. *See United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *see also United States v. Hastings,* 134 F.3d 235, 239 (4th Cir.1998). Even if all of these conditions are met, this Court will not correct the forfeited error unless the error " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *Olano,* 507 U.S. at 732, 113 S.Ct. 1770 (alteration in original) (quoting *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)).

First, Petitioner must prove that an error occurred. The Supreme Court in *Bailey* held that the Government must demonstrate that the defendant actively employed the firearm to prove that it was "used" under § 924(c). *See Bailey,* 516 U.S. at 144, 116 S.Ct. 501. The term active employment "includes brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." *Id.* at 148, 116 S.Ct. 501. Consequently, the Supreme Court rejected the proposition that "mere possession" is sufficient to meet the "use" requirement of § 924(c). *Id.* at 143, 116 S.Ct. 501. In this case, this Court instructed the jury that it must find "that during and in relation of such felony, the defendant used or carried a firearm." Trial Record at 420. However, the trial court failed to elaborate on the definition of "use." Thus, the Court left open the possibility that the jury could find that Petitioner "used" a firearm in violation of § 924(c) in the absence of any evidence that he actively employed such firearm. This instruction was erroneous in light of the Supreme Court's decision in *Bailey.*

Second, the error must be plain. At the time of Petitioner's trial, the instruction given by this Court was consistent with the law of the Fourth Circuit because it allowed for the possibility that the jury could find that Petitioner "used" a firearm in the absence of any evidence that he actively employed such firearm. *See, e.g., United States v. Paz,* 927 F.2d 176, 179 (4th Cir.1991). However, *Bailey* clearly established a definition for "use" that is contrary to the definition previously employed by the Fourth Circuit. The Supreme Court has stated that an error is plain when "the law at the time of trial was settled and clearly contrary to the law at the time of appeal." *Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1997). Therefore, the error was plain.

Third, it must be shown that the error affected Petitioner's substantial rights. In other words, the error must have been prejudicial: "It must have affected the outcome of the district court proceedings." *Olano,* 507 U.S. at 734, 113 S.Ct. 1770. A harmless error does not affect Petitioner's substantial rights and therefore does not satisfy the third requirement of plain error analysis under *Olano. See United States v. Chen,* 131 F.3d 375, 382 (4th Cir.1997) (en banc) (Williams, J., concurring).

The Supreme Court stated in *Johnson* that a district court's improper instructions to the jury on an element of the offense is amenable to harmless-error analysis. *See Johnson,* 117 S.Ct. at 1550. However, a district court's failure to instruct the jury on an element of the crime, as well as a district

court conclusively instructing the jury on an element of the crime, are errors not susceptible to harmless-error analysis and thus satisfy the third prong of the *Olano* test. *See United States v. Aramony*, 88 F.3d 1369, 1387 (4th Cir.1996) (failure to instruct the jury); *United States v. Johnson*, 71 F.3d 139, 144 (4th Cir.1995) (conclusively instructed the jury). In this case, the trial court neither failed to instruct the jury as to an element of the § 924(c) charge, nor did it conclusively instruct the jury as to an essential element of the crime. *See* Trial Record at 419–21. Therefore, the Court considers the error in this case to be one of misinstruction. This error is accordingly subject to harmless-error analysis, and the Court must determine whether Petitioner can show that the erroneous instruction affected his substantial rights.

The evidence at trial clearly shows that Petitioner supplied the sawed-off shotgun that was used in certain robberies. *See* Trial Record at 311, 314–15. Witnesses testified at trial that one of Petitioner's coconspirators carried the gun in two of the bank robberies. *See id.* at 75–77, 81–82. Petitioner's coconspirator stood in the middle of the Virginia Beach Federal Bank, holding the sawed-off shotgun, and told everyone to back up. *See id.* There was also testimony that one of the robbers carried the same shotgun during the August 20, 1990 robbery of the Life Savings Bank. *See id.* at 105, 107–10, 121–22, 127. Furthermore, a witness testified that at the August 23, 1990 bank robbery, one of the thieves carried a sawed-off shotgun and "pointed it at us and told us to get back or else." *See id.* at 157; *see also* 144–45, 165–66, 184. There is thus sufficient evidence to establish that the firearm was actively employed and to conclude that Petitioner aided and abetted the "use" of a firearm under the post-*Bailey* definition of such term in violation of § 924(c). Consequently, Petitioner's substantial rights were not affected by the trial court's misinstruction.[8]

In short, Petitioner's § 924(c) claim must fail.

---

**8.** Because the erroneous jury instruction was harmless error, the Court need not address whether this error seriously affected the fairness,

## IV. CONCLUSION

For the aforementioned reasons, Petitioner's motion is **DENIED**.

Petitioner is **ADVISED** that he may appeal from this final order by forwarding a written notice of appeal to the Clerk of the United States District Court, U.S. Courthouse, 600 Granby Street, Norfolk, Virginia, 23510. Said written notice must be received by the Clerk within thirty (30) days from the date of this order.

The Clerk is **DIRECTED** to mail a copy of this Order to Petitioner and to the United States Attorney, Eastern District of Virginia, World Trade Center, Suite 8000, 101 West Main Street, Norfolk, Virginia 23510.

**IT IS SO ORDERED.**